IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| SUN COKE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:07-cv-006 |
| | ) | (VARLAN/SHIRLEY) |
| MAN FERROSTAAL DO BRASIL | ) | |
| COMMÉRCIO E INDÚSTRIA LTDA., | ) | |
| and MAN FERROSTAAL | ) | |
| AKTIENGESELLSCHAFT, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM & ORDER**

This is a breach of contract action brought upon the basis of diversity of citizenship, 28 U.S.C. § 1332. Sun Coke Company (Sun Coke), a Tennessee corporation, has sued a German corporation, MAN Ferrostaal Aktiengesellschaft (Ferrostaal Germany), and a Brazilian corporation, MAN Ferrostaal Do Brasil Commércio E Indústria Ltda (Ferrostaal Brazil). The German corporation has been served with process, but the Brazilian corporation has not. Currently pending is Ferrostaal Germany's motion to dismiss the complaint for lack of in personam jurisdiction pursuant to Rule 12(b)(2), Federal Rules of Civil Procedure, or, in the alternative, to dismiss or stay the action under the Federal Arbitration Act, 9 U.S.C. § 16(a)(3). Because the Court concludes that the Court lacks in personam jurisdiction over Ferrostaal Germany, its motion to dismiss [Doc. 11] will be granted.

I. *Factual Background*

Ferrostaal Germany is based in Essen, Germany, and is organized under the laws of the Republic of Germany. It provides services such as engineering, supply, assembly, project management, and systems logistics in connection with industrial construction projects. [Doc. 14.] It is not licensed to do business in Tennessee, has no offices, employees, bank accounts, or property in Tennessee and has never done business in Tennessee. [Doc. 13.] Nor has it provided services in Tennessee to Sun Coke or any other customer. *Id.* Ferrostaal Germany did not regularly send employees or representatives into Tennessee in connection with the instant relationship with Sun Coke. *Id.*

On April 2, 2001, Sun Coke entered into a Memorandum of Understanding (MOU) with Ferrostaal Germany and Ferrostaal Brazil (collectively "Ferrostaal") pursuant to which Ferrostaal would provide engineering services in connection with the development and construction of coke plants and related co-generation facilities in Brazil. *Id.* This MOU was negotiated primarily in Miami, Florida. *Id.* Ferrostaal Germany signed the MOU in Essen, Germany. *Id.* No work or services under the project was to be performed in Tennessee.

In the MOU, Sun Coke and its affiliates agreed to provide certain designs, drawings, specifications, and other documents and information to Ferrostaal for the development and installation of heat recovery coke plants. [Doc. 13 at Ex. 1.] The MOU did not require either Ferrostaal Germany or Ferrostaal Brazil to pay any monetary consideration in exchange for the disclosure of information by Sun Coke. *Id.* The parties executed a confidentiality agreement pertaining to the information that Sun Coke and its affiliates planned to provide

to Ferrostaal in connection with the contemplated project, which was incorporated by reference into the MOU. [Docs. 1 at Ex. 1; 13 at Ex. 1.]

The MOU contains a choice of law and arbitration provision which states:

> <u>Governing Law; Arbitration of Disputes</u>. This MOU shall be governed by an construed in accordance wit the laws of England (United Kingdom) applicable to agreements made and performed therein. Other than a claim for equitable relief, which may be brought to any court of competent jurisdiction, all disputes arising out of this MOU shall be settled by arbitration in accordance with the rules of the International Chamber of Commerce, Paris. Any such arbitration shall be take [sic] place in Paris, France.

[Doc. 13 at Ex. 1.] The confidentiality agreement contains a nearly identical provision. [Doc. 1 at Ex. 1.]

A Sun Coke representative, Alison Grant, reports that Ferrostaal employees visited Tennessee on several occasions. [Doc. 19-2.] Specifically, Marco Antonio Marcial, Villian Oliverira, Renata Souza, and Marcos Dare' visited Tennessee in July 2001; Joern Walter and Jan Krull visited Tennessee in November 2001; and Howard Barnes, Helmut Kucken, Marco Antonio Marcial, and Jan Krull visited Tennessee in September 2002. *Id.* Ms. Grant does not know which of these Ferrostaal representatives were from Ferrostaal Germany. *Id.* Ferrostaal Germany asserts that representatives from Ferrostaal Germany were only present in Tennessee during the September 2002 visit. [Doc. 12.] Additionally, Ms. Grant states that there were multiple phone conversations and email messages from Ferrostaal Germany to Sun Coke employees in Knoxville to arrange meetings. [Doc. 19-2.]

The first project contemplated by the MOU was to be owned and operated by Sun Coke in Vitória, Brazil (the Vitória Project). [Doc. 13.] Later, in the course of project

development, around mid-2004, the concept changed so that a local company was created, Sol Coquieria Tubarao, Ltda (Sol), to own, develop and operate the coke plant and related co-generation facilities. *Id.* Sun Coke held, and still holds, an interest in Sol. *Id.* Sun Coke licensed its technical information to its affiliate Sol for use in connection with the development and subsequent operation of the Vitória Project. [Doc. 1.] Sun Coke recognized that Sol "must have access to Sun Coke's proprietary information to facilitate the start up and operation of the plant." [Doc. 1, ¶ 18.] Ferrostaal Germany and Ferrostaal Brazil entered into an engineering, procurement, construction and test management contract (EPCM contract) with Sol on February 28, 2005, in connection with the Vitória Project. [Doc. 13.] This EPCM contract was negotiated and signed in Vitória, Brazil. *Id.*

In connection with the Vitória Project, Ferrostaal Germany received Sun Coke information concerning heat recovery coke oven technology in Essen, directly from Sun Coke employees, via Ferrostaal Germany's computers through remote access to a website set up in Knoxville, but with the host server in Houston, Texas, and at Sun Coke's direction, from Ferrostaal Brazil which had previously been given the information by Sun Coke. [Doc. 13.] Neither Sun Coke nor its affiliates physically provided information to Ferrostaal Germany in Tennessee. *Id.*

Prior to October 2005, Ferrostaal attempted to prepare a turnkey proposal with a third party not authorized to receive Sun Coke confidential information. [Doc. 1.] This proposal was for the development of a proposed heat recovery coke plant for the Atlantic Steel project located at Sepetiba, Brazil (the "Sepetiba Project"). *Id.* Sun Coke believed that Ferrostaal

4

had disclosed or would disclose confidential information to enable the third party to build a heat recovery coke plant for the Sepetiba Project. *Id.* In October 2005, Sun Coke filed a Request for Arbitration with the International Chamber of Commerce in Paris on the assertion that Ferrostaal Germany may have improperly used or disclosed "confidential information" in connection with the Sepetiba Project. *Id.*

A representative of Ferrostaal Germany visited Sun Coke in Knoxville in late 2005 in an attempt to resolve the Paris arbitration. [Doc. 13 at ¶ 11.] No written contract resulted from this meeting, however, after the representative returned to Germany, Ferrostaal sent a letter dated November 24, 2005 to Sun Coke summarizing the terms discussed in Tennessee. *Id.* The terms listed in Ferrostaal's letter included: (1) Ferrostaal inviting representatives of Sun Coke to visit Ferrostaal's offices in Essen and Brazil to insure that the alleged breach of confidentiality had not occurred; (2) Ferrostaal withdrawing from participation in the Sepetiba Project, and (3) Sun Coke withdrawing the pending arbitration proceedings. [Doc. 1, Ex. B.] Ferrostaal subsequently backed out of its commitment to allow Sun Coke to visit its offices confirm that it had taken appropriate steps to protect the proprietary information. [Doc. 1.]

Sol independently elected to terminate Ferrostaal's participation in the Vitória Project, and under Article 4 of the Confidentiality Agreement, Ferrostaal became obligated to return all confidential information. *Id.* Sun Coke demanded that all such information be returned, but Ferrostaal initially failed to comply. *Id.* Sun Coke also discovered that Ferrostaal had

5

included on its website, without permission, a photograph depicting certain of Sun Coke's proprietary designs. *Id.*

On April 21, 2006, Sun Coke again requested that Ferrostaal return of its confidential information as defined in the MOU and confidentiality agreement and requested that Ferrostaal remove all depictions of Sun Coke's proprietary designs from its website. *Id.* By cover letters dated September 1, 2006, March 9, 2007, and September 17, 2007, Ferrostaal Germany returned some of the information that it had received from Sun Coke. [Doc. 13.] Ferrostaal Germany invited Sun Coke to call if there were any questions about the return of the information, but Sun Coke has never contacted Ferrostaal Germany to verify or discuss the return of any of the information. *Id.*

On January 8, 2007, Sun Coke filed the instant action requesting that Ferrostaal be required to (1) return the proprietary information; (2) certify it has done so and describe the means taken to assure no copies have been retained, nor other improper uses made of the proprietary information; and (3) permit Sun Coke access to Ferrostaal's Essen headquarters and Brazilian offices to confirm all proprietary information has been returned. [Doc. 1.] Ferrostaal now moves to dismiss for lack of personal jurisdiction. [Doc. 11.]

## II. *Analysis*

The standards for determining a 12(b)(2) motion are well established in the Sixth Circuit. *Dean v. Motel 6 Operating LP*, 134 F.3d 1268, 1271-72 (6th Cir. 1998). The party seeking assertion of personal jurisdiction bears the burden of showing that jurisdiction exists. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996) (citing *Theunissen v.*

*Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)). "[I]n the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen*, 935 F.2d at 1458 (citations omitted).

When a motion to dismiss has been filed for lack of personal jurisdiction, the court "may determine the motion on the basis of the affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." *Id.* If the district court does not hold an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdiction in its pleadings and affidavits, which must be considered in the light most favorable to plaintiff. *Compuserve*, 89 F.3d at 1262. "Dismissal in this procedural posture is proper only if all the specific facts which the plaintiff alleges collectively state a prima facie case for jurisdiction." *Id.* at 1262.

Tennessee's long-arm statute permits personal jurisdiction on "[a]ny basis not inconsistent with the Constitution of this State or of the United States." T.C.A. § 20-2-214(a)(6). To establish that a defendant is subject to personal jurisdiction, the Due Process Clause requires that a defendant "have certain minimum contacts" with the forum state, such that the exercise of personal jurisdiction "does not offend traditional notions of fair play and substantial justice." *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 150 (6th Cir. 1997). The Sixth Circuit utilizes a three-part test to determine whether exercising personal jurisdiction would violate the requirements of the Due Process Clause:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). In actions arising from alleged breach of contract, like the complaint in this case, the mere fact that an out-of-state defendant enters into a contract with a resident of the forum state is not sufficient, by itself, to satisfy due process requirements. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478-79 (1985).

Personal jurisdiction cannot be established over a non-resident defendant consistent with the Due Process Clause unless the defendant is subject to either general or specific jurisdiction in the state in which the diversity case is pending. *See Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 418 (6th Cir. 1984). Plaintiff attempts in this case to show specific personal jurisdiction over Ferrostaal Germany rather than general. Based on the paucity of contacts between Ferrostaal Germany and Tennessee, there would be no basis for a finding that the company had "continuous and systematic" contacts with the State to make it subject to general personal jurisdiction. *See Gregurek v. Swope Motors, Inc.*, 138 S.W.3d 882, 884-85 (Tenn. Ct. App. 2003).

The Sixth Circuit applied the three elements of the test set out in *Mohasco* in a case similar to this one in *International Technologies Consultants, Inc. v. Euroglas S.A.*, 107 F.3d 386, 388 (6th Cir. 1997). Plaintiff challenges the applicability of *International Technologies*

8

on the basis that the contract at issue in that case specified that "[j]urisdiction for this contract is Berne, Switzerland." 107 F.3d at 387. Though the *International Technologies* Court considered the jurisdiction selection provision relevant, that was only one factor the court considered in determining whether the defendant could reasonably anticipate being haled into court in Michigan. *Id.* at 393. Because the decision in *International Technologies* was not based on that distinction alone, the Court determines that its analysis is applicable here.

In *International Technologies*, a Michigan-based company filed suit in Michigan against a Swiss company and other European persons and entities claiming that the Swiss company, among others, appropriated intellectual property developed regarding construction of a manufacturing plant in Europe. The Swiss company had no offices in the forum state and only sent employees to the state for "occasional visits" except that it had one employee working in Michigan for four months. The Sixth Circuit ruled that the plaintiff had failed to make a prima facie showing of personal jurisdiction over the Swiss company:

> [G]iven the terms of the plaintiff's contract with that company, and given the Supreme Court's admonition to exercise restraint in extending our notions of personal jurisdiction into the international field, we conclude that the plaintiff has failed to sustain its burden with respect to the Swiss company as well. To allow the suit to be maintained against this company in Michigan, we are satisfied, would offend "traditional notions of fair play and substantial justice."

107 F.3d at 388.

Even considering the facts in the light most favorable to the plaintiff, Ferrostaal Germany did not purposefully avail itself of the benefits and protections of Tennessee law. It never elected to do business in Tennessee; it has not provided services in Tennessee to Sun

9

Coke or any other customer; it has no offices, employees, bank accounts or property in Tennessee; and it does not regularly send employees or representatives into the state. Moreover, Ferrostaal Germany did not purposefully undertake to do or to cause an act to be done in Tennessee in connection with this lawsuit. The MOU pertained to the development and installation of a heat recovery coke plant and co-generation facility in Brazil. The terms of the MOU were negotiated in Miami, Florida, and Ferrostaal Germany signed the contract at its corporate headquarters in Essen, Germany. Sun Coke claims that Ferrostaal Germany has improperly used or disclosed information provided in accordance with the MOU. It is clear that the conduct complained of occurred either in Germany or Brazil and not in Tennessee. Additionally, the MOU provides that it would be governed and construed in accordance with the laws of England and the parties agreed that disputes arising out of the MOU other than claims for equitable relief would be resolved solely through arbitration in Paris, France. It is not reasonable to conclude that Ferrostaal Germany expected to be hailed into court in Tennessee under the circumstances.

After the MOU was signed in April 2001, there were only two occasions when a representative of Ferrostaal Germany visited Tennessee.[1] These two trips to the state were certainly less than the occasional visits and four months of employment of a contractor found to be insufficient to justify personal jurisdiction in *International Technologies*. 107 F.3d at 388. The first visit occurred on September 19, 2002, nearing 18 months after the MOU was

---

[1] Though Sun Coke alleges that there were four occasions when Ferrostaal employees visited Tennessee, it has not shown that Ferrostaal Germany employees visited on more than two occasions.

executed, when a representative of Ferrostaal Germany met with Sun Coke in Knoxville. The visit was not in connection with the negotiation of the 2001 MOU and offers no basis for showing any purposeful availment.

The second visit of a Ferrostaal Germany representative to Tennessee, which occurred in late 2005, was an attempt to settle the Paris arbitration and likewise shows no purposeful availment. The United States Court of Appeals for the Sixth Circuit has addressed this issue and ruled that a trip into the forum state solely for the purposes of settlement should not be considered a jurisdictional fact:

> Further, we do not believe that [defendant's] action in sending a representative to Ohio to negotiate a settlement renders the exercise of personal jurisdiction appropriate in this case. The district court noted, and we agree, that attributing significance (for the purpose of determining whether personal jurisdiction exists) to a single entry into the state in order to negotiate a resolution of a prior dispute would create a disincentive for foreign corporations to pursue a resolution in what may be the most efficient manner possible, namely, traveling to an adversary's headquarters and negotiating there.

*Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 796 (6th Cir. 1996).

As in *International Technologies*, plaintiff has failed to make out the requisite showing as to any of the three prongs of the *Mohasco* test. The Court cannot determine that Sun Coke has met its burden of showing that Ferrostaal Germany purposefully availed itself of the privilege of acting or causing a consequence in Tennessee related to the dispute between the parties or that defendant's actions were substantial enough to make personal jurisdiction reasonable.

### III. *Conclusion*

In light of the foregoing, defendant Ferrostaal Germany's motion to dismiss for lack of in personam jurisdiction [Doc. 11] is hereby GRANTED and this action DISMISSED as to Ferrostaal Germany. Defendant's motion to stay the matter pending arbitration is pretermitted.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE